Madden-, Judge,
delivered the opinion of the court :
The plaintiff sues for the amount by which the open market price of some 230,000 barrels of fuel oil delivered by it to the Navy in July 1947 exceeded the price fixed in a contract between the parties. The plaintiff claims that the contract had expired when the oil was delivered. The Government claims that the contract was still in effect and that the price named in it was applicable to the oil in question.
*123 The first step in the making of the contract here involved was the Government’s invitation to the plaintiff, on February 18, 1947, to bid on the furnishing of 1,350,000 barrels Navy fuel oil special and 360,000 barrels Diesel fuel oil “delivered FOB vessels at supplier’s works' during the period 1 April through 30 June 1947.” The plaintiff telephoned that it would furnish one cargo of about 115,000 barrels per month at a stated price. The plaintiff was advised that a contract would be awarded to it.
A written contract was prepared by the Navy and sent to the plaintiff for execution. In findings 3 and 4 we quote pertinent parts of the contract. Paragraph III of the Schedule attached to the contract, said:
III. Deliveries
The supplies to be furnished hereunder shall be delivered f. o. b. tankers and/or barges at Contractor’s works, Lake Charles, Louisiana, in such quantities as may be ordered by the Government during the period beginning 1 April 1947 and ending 30 June 1947. Deliveries shall be made upon 3 days’ notice.
The Navy took delivery of 121,155.99 barrels of oil on May 24, 1947. On June 6, the Navy advised the plaintiff that another named ship would lift a cargo of oil between June 17 and 19. The ship was delayed and in fact did not receive the oil until J uly 24. On June 11 the Navy advised the plaintiff as follows:
ORDER IS HEREBY PLACED FOR THE REMAINING CARGO OP DIESEL FUEL OIL UNDER CONTRACT N7SX-250 EX LAKE CHARLES, LOUISIANA X VESSEL WILL BE NOMINATED AT A LATER DATE X
On or about June 18 the Navy advised the plaintiff that the tanker S. S. Fort Massaio was nominated to lift this last cargo on July 20. On June 23 the Navy told the plaintiff that the S. S. Port Republic was substituted for the Fort Massaic, and that it would be ready for loading on or about J uly 18. In fact the Port Republic did not load until July 29.
On July 11, a representative of the Navy having telephoned the plaintiff with regard to the possibility of substituting another ship for the Port Republic, the plaintiff’s agent said that he did not know whether the plaintiff would load any *124 ships in July at the contract price. This agent of the plaintiff submitted the question to his superior who, on July 22, wrote the Navy that the plaintiff would not load the ships at .the contract price. The Navy urged that it had the right to obtain the oil at the contract price and the dispute was compromised by an agreement that the ships would be loaded, to avoid delay and demurrage, but without prejudice to the rights of both parties to maintain their respective contentions. The ships were loaded, as we have said, on July 24 and July 29. The difference between the contract price and the open market price of the oil in question was $108,718.75.
The question for decision is whether the contract price was applicable only to oil of which the Navy took delivery during the months of April, May, and June, as urged by the plaintiff, or to all oil ordered by the Navy during those months, with delivery taken within a reasonable time thereafter, as urged by the Government. We look first to the texts of the contract papers. The invitation for bids, quoted in finding 2, if taken literally, speaks of oil “delivered * * * during the period 1 April through 30 June, 1947.” The brief notification of award, also quoted in finding 2, refers to oil “in such quantities as may be ordered by the Government during the contract period 1 April through 30 June, 1947.” The formal contract later executed said in Paragraph III, hereinabove quoted, substantially the same thing as the notification of award.
Taken literally, the invitation for bids supports the plaintiff’s argument that the contract was to apply only to oil delivered during the three-month period named in the contract, while the notification of award and the formal contract support the Government’s argument. The plaintiff urges that the phrase “during the period, etc.,” in Article III of the contract schedule, does not relate to the preceding words “as may be ordered by the Government,” but rather to the words “shall be delivered,” which appear at the beginning of the paragraph. It says that a comma should follow the word “Government,” because the phrase “in such quantities as may be ordered by the Government” was inserted only to show that the Government was not obligated to take any oil at all above the minimum quantity of $100 worth named *125 in Paragraph II. It says that other contracts made by the Navy in which a comma was so inserted, or in which other punctuation occurred changing the literal meaning of the language, show that the Navy was not meticulous in its punctuation, and no weight should be attached to the omission, probably inadvertent, of a comma.
We think there is a good deal of merit in the plaintiff’s argument as to the grammatical construction of the language of the contract writings. We think the invitation for bids, the notification of award, and the formal contract, taken together, present an ambiguity which requires us to ascertain the intent of the parties from outside sources, if that can be done.
In finding 10 it appears that the Navy had, for many years, made contracts similar to the one here in question with oil suppliers, including the plaintiff, and that fairly frequently the oil contracted for was ordered within the period named in the contract, but delivery was taken after that period, and the supplier accepted the contract price without protest. We think that, in view of the large amounts of oil used by the Navy, this practice had become a recognized practice in the trade, which could not be refused recognition by a particular supplier without adequate advance notice that it intended to do so. We think the plaintiff’s conduct in this case showed a recognition of the custom. As shown in finding 5, the Navy advised the plaintiff that a ship would take oil under the contract on July 20. The plaintiff gave no notice that it would not be willing to accept the contract price for oil so taken. On June 28, the Navy advised the plaintiff that a ship would take oil, under the contract, on or about July 18. Again there was no notice that the contract price would not be applicable. If, on those occasions, the plaintiff had given notice of its contention, the Navy could, perhaps, have taken advantage of the contract price, which was then substantially lower than the market price, by sending other ships to take the oil. But not until July 11 did the plaintiff mention, and then only rather casually in a telephone conversation initiated by the Navy, the possibility that it might take the position that the Navy’s rights under the contract had expired. And not Until J uly 22 did it notify *126 the Navy that it definitely took that position. We think its assertion came too late, even assuming that it could have taken that position if it had given adequate notice before the expiration of the period named in the contract.
The plaintiff urges that the Navy did not, in fact, “order” the oil here in question before June 30. It bases this contention upon the'changes made by the Navy in the nomination of ships to receive the oil, as shown in our finding 5. The ships that actually received the oil were nominated in June, and we think that the Navy ordered the oil in June.
The plaintiff’s petition will be dismissed.
It is so ordered.
Howell, Judge; Whitaker, Judge; Littleton-, Judge; and Jones, Chief Judge, concur.